## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| **IN RE:**<br>**JAMIE POOLE,**<br>    Debtor. | **Case No. 21-00512-NGH**<br><br>**Chapter 7** |

**MEMORANDUM OF DECISION**

### INTRODUCTION

Debtor Jamie Poole ("Debtor") filed a chapter 7[1] bankruptcy petition on August 5, 2021. Doc. No. 1.[2] In doing so, Debtor was represented by attorney Kameron M. Youngblood ("Youngblood"). Upon finding a number of issues concerning how Youngblood was handling his cases, the United States Trustee ("UST") filed a motion for sanctions in this and over 50 other cases.[3] Doc. No. 21. The Court conducted a hearing on the motions on January 3, 2022, and it allowed supplemental briefing. The UST filed a supplemental brief, Doc. No. 49, and a motion requesting the evidentiary record be supplemented with an affidavit of chapter 7 trustee Patrick Geile, Doc. No. 48. No

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure 1001–9037, and all "LBR" references are to this Court's Local Bankruptcy Rules.

[2] The Court took judicial notice of the record pursuant to Federal Rule of Evidence 201 at the January 3, 2022 hearing in this case.

[3] Seven of the cases were assigned to the undersigned Judge; the remaining 44 were assigned to Chief Judge Joseph M. Meier. The UST's motion references another case assigned to the undersigned Judge, *In re Wheeler*, Case No. 20-00532-NGH, *see* Doc. No. 21 at 29, however, the motion was not filed in the *Wheeler* case, and therefore, the Court will not enter a decision or order in that case. No

MEMORANDUM OF DECISION - 1

objections were filed before the February 15, 2022 deadline,[4] and the UST's motions for sanctions were taken under advisement in the seven cases before the undersigned Judge.

After considering the record, submissions, and arguments, as well as applicable law, this decision resolves the motion in this case.  Fed. R. Bankr. P. 7052; 9014.

**DISCUSSION AND DISPOSITION**

In the motion in this case, the UST alleges several specific areas of sanctionable conduct, arguing Youngblood:  1) violated Rule 1007; 2) violated the Idaho Rules of Professional Conduct; 3) filed a misleading Rule 2016(b) disclosure; 4) charged Debtor unreasonable fees; 5) created a conflict of interest between himself and Debtor through his fee agreement; and 6) violated the Court's wet-ink signature requirements. Additionally, the UST alleges a pattern and practice of violations under § 526.  As a result, the UST seeks the following monetary and non-monetary remedies:

1. Cancelling or voiding any contract or agreement between Debtor and Youngblood under § 329;

2. Disgorging the fees Debtor paid to Youngblood under § 329;

3. Injunctive relief under § 526(c)(5) and the Court's inherent powers, specifically:
   a. Suspending Youngblood's practice in front of the Court until the Court is satisfied the concerns identified have been corrected.
   b. If Youngblood is allowed to practice in front of the Court again, requiring him to file a "status report" signed by the client and Youngblood in each case where he appears as counsel, attesting that:
      i. Youngblood personally met and reviewed the Petition, Schedules, Statement of Financial Affairs, and other documents with the client prior to filing;
      ii. The client's questions have been answered regarding the Petition, Schedules, Statement of Financial Affairs, and other documents, and the information included therein, and the client is satisfied he or she

---
[4] The motion to supplement will therefore be granted.

MEMORANDUM OF DECISION - 2

    is receiving adequate representation from Youngblood; and

  iii. The client provided Youngblood a copy of the wet signatures for the Petition, Schedules, SOFA, and other documents filed in the case. The requirement to file such a report should continue until the Court is satisfied it is no longer necessary.

4. Imposing a civil penalty under § 526(c)(5)(B) against Youngblood to deter him from making untrue and misleading statements and misrepresentations in the future, as a result of his intentional violations, and pattern and practice of violating, § 526(a)(1), (a)(2), and (a)(3).

Doc. Nos. 21 and 49. The Court will discuss each of the allegations and sanctions sought.

  **A. Sanctionable Conduct**

  **1. Rule 1007**

The Court, creditors, the trustee, and UST rely on a debtor's bankruptcy documents for information about a debtor's finances as such information is typically private. The Code, Rules, and local rules contain requirements and deadlines for filing those necessary documents. Section 521 describes a debtor's duties, including what documents must be filed. Specifically, § 521(a)(1) requires a debtor to file certain schedules, a Statement of Financial Affairs ("SOFA"), and copies of payment advices. Rule 1007(b) lists the documents a debtor is required to file, and subsection (c) of that Rule provides the deadlines for doing so. Of particular relevance here, a debtor must file schedules and the SOFA within fourteen days of filing the petition. Rule 1007(c). The Rule further allows for an extension of this time "only on motion for cause shown and on notice to the [UST]. . .." *Id*. LBR 1007.2 further limits extensions of time for filing required documents, providing that any extension given under Rule 1007(c):

MEMORANDUM OF DECISION - 3

will not be granted beyond the date set for the meeting of creditors under § 341(a) unless a judge orders otherwise for cause shown. Any motion for extension of time filed under this rule shall (a) state the date of extension requested and (b) identify the date currently set for the § 341(a) meeting or, alternatively, affirmatively allege that no such date has yet been set. An extension beyond the date set for the § 341(a) meeting will not be granted unless the debtor has also been granted a continuance of the § 341(a) meeting, pursuant to LBR 2003.1, and the confirmation hearing if applicable, and provided appropriate notice thereof.

In this case, Debtor filed a skeletal bankruptcy petition on August 5, 2021; the meeting of creditors was scheduled for September 9, 2021. Doc. Nos. 1 and 3. The deadline to file all other required documents was August 19, 2021. Doc. No. 13. On September 8, 2021, twenty days after the deadline and one day before the scheduled meeting of creditors, Youngblood filed the required documents. Doc. Nos. 15–17. Youngblood did not request an extension of the deadline.

The Court concludes Youngblood did not comply with the Bankruptcy Code, Rules, and this Court's local rules, which provides a basis for imposition of sanctions. The UST alleges additional violations, however, that also provide grounds for sanctions.

## 2.     Idaho Rules of Professional Conduct 1.3 and 1.4

The Idaho Rules of Professional Conduct apply to attorneys practicing before this Court. *See* LBR 9010.1(g) ("members of the bar of this court shall adhere to the Rules of Professional Conduct promulgated and adopted by the Supreme Court of the State of Idaho."); *see also In re Grimmett*, 2017 WL 2437231, at *5 (Bankr. D. Idaho Jun. 5, 2017), *aff'd* Case No. 1:17-cv-00266-EJL (D. Idaho Feb. 16, 2018). The scope of the Idaho Rules of Professional Conduct provides guidance to the Court:

MEMORANDUM OF DECISION - 4

> Some of the Rules are imperatives; cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has discretion to exercise professional judgment. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other Rules define the nature of relationships between the lawyer and others. The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules.

Idaho Rule of Professional Conduct "Scope."

Idaho Rule of Professional Conduct 1.3 provides that a lawyer "shall act with reasonable diligence and promptness in representing a client." The commentary to the rule further states the "[u]nless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client." Idaho R. Prof. Conduct 1.3 Comment. ¶ 4. In addition, Idaho Rule of Professional Conduct 1.4 provides that a lawyer shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
>
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
>
> (3) keep the client reasonably informed about the status of the matter;
>
> (4) promptly comply with reasonable requests for information; including a request for an accounting as required by Rule 1.5(f); and
>
> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

The UST's motion for sanctions asserts Youngblood did not fulfill his duties of diligence

MEMORANDUM OF DECISION - 5

and communication in Debtor's case.  Specifically, the UST points to Youngblood's failure to appear at Debtor's § 341(a) meeting of creditors on September 9, 2022, and October 7, 2022.  That failure not only violated Youngblood's professional responsibilities to Debtor under Idaho Rule of Professional Conduct 1.3, but also his own agreement with Debtor as represented in his Rule 2016(b) disclosure of professional compensation as discussed below.  Youngblood's inactions are sanctionable.

The UST also points to an October 13, 2021 notice from Debtor terminating Youngblood as counsel and designating new counsel.  Doc. No. 19.  That termination asserts Debtor attempted to contact Youngblood but did not receive any response.  *Id.*  While the Court does not condone any failure by Youngblood to communicate with Debtor or keep Debtor informed regarding the case, the general assertion within that pleading is not admissible evidence sufficient to make a finding that Youngblood violated Idaho Rule of Professional Conduct 1.4.  However, the UST asserts sanctions are appropriate under still other theories.

3.      **Rule 2016(b) Disclosure**

Section 329 of the Code requires an attorney to disclose the amount of all "compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case[.]"  This disclosure requirement is implemented by Rule 2016(b), which requires:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the

MEMORANDUM OF DECISION - 6

statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . . A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

In this case, Youngblood filed a Rule 2016(b) disclosure statement with the petition on August 5, 2021 ("Disclosure"). Doc. No. 5. The first page of the Disclosure indicates Debtor paid Youngblood nothing prior to the bankruptcy filing, but the agreed fee was $2,210 "for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case[.]" *Id.* It further provides in paragraph 5:

> In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
> d. OTHER: [nothing listed].

*Id*. However, the second page of the Disclosure is practically illegible and it appears an interim page is missing as the paragraphs appear to be numbered starting at 10 on the second page, leaving paragraphs 6–9 missing and the Court without knowledge of their content. Moreover, given the content of the Disclosure, and the representations made at the January 3 hearing, the Court ordered Youngblood to file an amended Rule 2016(b) statement to disclose all payments Youngblood received post-petition. Doc. No. 45. Youngblood failed to comply with that Order, and the current Disclosure without more is

MEMORANDUM OF DECISION - 7

inadequate.

### 4. Conflicts of Interest

The UST next alleges that the language in Youngblood's Disclosure creates a conflict of interest prohibited by the Idaho Rules of Professional Conduct. However, as noted, the Disclosure filed in this case was incomplete and does not clearly establish the financial agreement between Debtor and Youngblood. It is not clear on this record that Youngblood was having Debtor pay the fee under an installment contract. As such, the Court cannot find a conflict of interest under Idaho Rule of Professional Conduct 1.7 on this evidence.

### 5. Reasonableness of Bifurcated Fees

The UST also asserts the fees in this case were unreasonable based on the conflicts created under the fee agreement between Debtor and Youngblood and based on the fee structure as compared to other cases. However, the Court cannot reach the same conclusion on the evidence presented. The Disclosure submitted in this case is incomplete and the Court cannot speculate regarding the missing content. In addition, whether fees are reasonable is case specific and cannot be based on the law of averages. Each case is different, and what is a reasonable fee to charge one debtor may not be so for the next. Accordingly, the UST's motion for sanctions due to the unreasonableness of the fee charged will be denied.

### 6. "Wet-Ink" Signature Violations

Pursuant to LBR 5003.1, all documents filed in a bankruptcy case must be filed electronically. LBR 5003.1(c). Original documents must be retained by the filing party

MEMORANDUM OF DECISION - 8

"for a period of not less than the maximum allowed time to complete any appellate process, or the time the case of which the document is a part, is closed, whichever is later." LBR 5003.1(e).  LBR 5003.1(e) also requires the filing party to produce the original document "upon an order of the court."  LBR 5003.1(j) addresses signatures and establishes that "[t]he electronic filing of any document by a Registered Participant shall constitute the signature of that person for all purposes provided in the Federal Rules of Bankruptcy Procedure.  For instructions regarding electronic signatures, refer to the ECF Procedures."  In turn, the "ECF Procedures" referred to are located on this Court's website. *See* LBR 5003.1(b).  Paragraph 13A of the ECF Procedures document provides:

> A Registered Participant filing a Verified Pleading [a pleading in which a person verifies, certifies, affirms or swears under oath or penalty of perjury concerning the truth of matters set forth in that pleading or document] electronically shall insure the electronic version conforms to the original, signed pleading/document.  Each signature on the original, signed pleading/document shall be indicated on the electronically filed Verified Pleading with the typed name on the signature line of the person purported to have signed the pleading/document. ***The electronic filing of a Verified Pleading constitutes a representation by the Registered Participant that he or she has the original, signed document in his or her possession at the time of filing***.  The Registered Participant shall retain the Verified Pleading for a period of not less than the maximum allowed time to complete any appellate process, or the time the case or Adversary Proceeding of which the document is a part, is closed, whichever is later. The document shall be produced upon an order of the Court.

(emphasis added).  The ECF Procedures instruct attorneys to file a scanned pdf copy of the original signature page of the original and any amended petition, schedules, and statement of financial affairs at the same time as the electronic version is filed.  ECF Procedures, at ¶ 13B.  Finally, the ECF Procedures provide that the "original of all conventionally signed documents shall be retained pursuant to Dist. Idaho Loc. Civ. R.

MEMORANDUM OF DECISION - 9

5.1(e) or LBR 5003.1(e)." *Id.* at ¶ 19.

In this case, the UST asserts the signature pages filed by Youngblood do not satisfy the requirements of the local rule and the Court's ECF Procedures. *See* Doc. No. 8 (petition, certification of notice under § 342(b), and verification of creditor matrix) and Doc. No. 17 (statement of intention, statement of financial affairs, and declaration about schedules). Specifically, the UST contends the signature pages "appear to be photographs of signature pages that were either mailed, texted, or otherwise provided to Youngblood" and therefore "it does not appear Youngblood physically obtained, and is retaining, the original wet ink signatures[.]" Sanctions Motion, Doc. No. 21 at 13. While the Court agrees the pages at issue appear to be photographs or copies of signature pages, the Court cannot join the UST's leap of logic and conclude Youngblood has never obtained and does not now retain the original wet ink signatures. There are other plausible explanations for why poor-quality copies of wet signature pages might be filed with the Court. The Court will not presume Youngblood engaged in sanctionable conduct when the evidence is lacking.

### 7. "Pattern and Practice" of Violations Under § 526

The UST also argues it has demonstrated a pattern and practice of Youngblood violating § 526. Section 526 of the Code provides restrictions on "debt relief agencies." It provides, in pertinent part:

(a) A debt relief agency shall not—

(1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

MEMORANDUM OF DECISION - 10

    (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

    (3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—

     (A) the services that such agency will provide to such person; or

     (B) the benefits and risks that may result if such person becomes a debtor in a case under this title;

    . . .

 (c)  . . .

    (5) Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may—

     (A) enjoin the violation of such section; or

     (B) impose an appropriate civil penalty against such person.

A bankruptcy attorney is a debt relief agency. *See* § 101(12A) (defining "debt relief agency" as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration"); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232 (2010) (holding that a bankruptcy attorney falls within the definition of a "debt relief agency."). The Code also defines "assisted person" as "any person whose debts consist primarily of consumer debts and the

MEMORANDUM OF DECISION - 11

value of whose nonexempt property is less than $204,425."[5]  Section 101(3).  Thus, Youngblood qualifies as a debt relief agency as Debtor claimed primarily consumer debts and nonexempt property valued at less than $204,425.

As the statute indicates, if a debt relief agency represents to an assisted person that it will provide certain services in connection with a bankruptcy case, and then fails to perform those services, the debt relief agency has violated § 526(a)(1).  Moreover, § 526(a)(2) is violated if a debt relief agency makes, or counsels or advises any assisted person to make, a statement in a document that is filed with the court, that is untrue or misleading, or using reasonable care should have been known to be untrue or misleading.  Finally, if a debt relief agency misrepresents the services that it will provide to an assisted person or the benefits and risks that may result if such person files a bankruptcy petition, then § 526(a)(3) may have been violated.

The Court finds Youngblood violated § 526(a)(1) and (a)(3) as a debt relief agency in this case.  Despite having an incomplete 2016(b) disclosure, what was submitted conveyed to Debtor and the Court that Youngblood would represent Debtor at the meeting of creditors.  He failed to do so.  Moreover, a clear and consistent pattern and practice of violating § 526 has been demonstrated.  Of the seven cases assigned to the undersigned Judge in which the UST filed the sanctions motion, this Court has determined the following:

---

[5] This figure is subject to adjustment and was adjusted to $204,425 effective April 1, 2019.  The amount increased to $226,850 on April 1, 2022.  The case at issue here was filed when the amount was $204,425.

MEMORANDUM OF DECISION - 12

  Violation of Rule 1007 and § 521:  2 cases

  2016(b) disclosure problems:  7 cases

  Conflict of interest in fee agreement:  6 cases

Add those to the findings in the May 2022 decisions on the 44 cases before the Honorable Joseph M. Meier (20 Rule 1007 violation cases; 31 Rule 2016(b) disclosure problem cases; and 23 conflict cases), and the Court concludes the UST has established a clear pattern and practice of Youngblood violating § 526. *See In re Hanawahine*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017) (a pattern and practice was established by the fact that bankruptcy courts in three other jurisdictions had sanctioned the bankruptcy firm and/or its principal for abandoning debtors, and a motion was pending in a fourth jurisdiction). Such violation exposes Youngblood to both injunctive and civil penalties.

  **B.**  **Sanctions and Penalties**

  As outlined above, Youngblood engaged in multiple forms of sanctionable conduct. In response, the UST seeks cancelation of the contract between Youngblood and Debtor, disgorgement of Youngblood's $2,210 fee, injunctive relief, and imposition of a civil penalty.

  **1.**  **Section 329 and Disgorgement of Fees**

  The UST seeks to void or cancel the contract of employment between Youngblood and Debtor pursuant to § 329. However, based on Youngblood's representations in other cases that he was no longer able to represent his clients, his failure to appear at the January 3 hearing on the UST's sanctions motions, and his failure to file an amended Rule 2016(b) disclosure statement, the Court terminated the attorney client relationship

MEMORANDUM OF DECISION - 13

between Youngblood and Debtor on February 3, 2022. Doc. No. 52.[6] Thus, the UST's request is moot as the relief has already been granted.

As the Court has already cancelled the contract between Youngblood and Debtor, it now turns to the issue of disgorgement. Section 329(b) provides that if the compensation paid to a debtor's counsel exceeds the reasonable value for the services provided, "the court may cancel any such agreement, or order the return of any such payment, to the extent excessive[.]" Courts interpreting this provision have looked beyond the quantity of fees charged and used it to redress other issues with the attorney client relationship. *See e.g., Grimmett*, 2017 WL 2437231, at *9 (fees deemed excessive because fee agreement and collection measures created conflict of interest); *Hale v. United States Trustee (In re Basham),* 208 B.R. 926, 932 (9th Cir. BAP 1997) (the record "supports the bankruptcy court's finding that the fees were unreasonable given the . . . failure to provide competent and complete representation of the [debtors]); *In re Martin*, 197 B.R. 120, 126 (Bankr. D. Colo. 1996) ("The compensation to be paid to an attorney can be deemed excessive for a host of reasons, including but not limited to an attorney's failure to perform agreed upon services, failure to comply with the disclosure requirements, the existence of conflicts of interest, and the like.").

The Bankruptcy Code's disclosure requirements are mandatory, and courts have held that an attorney who fails to comply with those requirements forfeits any right to

---

[6] While the Court also ordered the removal of Youngblood as counsel of record, Debtor had retained new counsel on October 13, 2021, and the notice issued states that Debtor terminated Youngblood as her attorney at that time. Doc. No. 19.

MEMORANDUM OF DECISION - 14

receive compensation. *Hale*, 208 B.R. at 930–31 (citing *Peugeot v. United States Tr. (In re Crayton),* 192 B.R. 970, 981 (9th Cir. BAP 1996)). Once the bankruptcy court determines that an attorney has violated § 329 and Rule 2016, the bankruptcy court has the authority to order the attorney to disgorge all of the attorney's fees. *Hale,* 208 B.R. at 931; *In re Blackburn*, 448 B.R. 28, 43 (Bankr. D. Idaho 2011) ("The state of the law is clear—an attorney who neglects to meet the disclosure requirements of § 329(a) and Rule 2016(b), even if inadvertently, forfeits the right to receive compensation for services rendered and may be ordered to return fees already received."). Indeed, the Tenth Circuit held that "full disgorgement is [not] always appropriate for failure to disclose under § 329[,] [b]ut it should be the default sanction, and there must be sound reasons for anything less." *SE Prop. Holdings, LLC v. Steward (In re Stewart)*, 970 F.3d 1255, 1267 (10th Cir. 2020). The Ninth Circuit concluded that even a negligent or inadvertent failure to fully disclose relevant information under Rule 2016 may result in denial of requested fees. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 882 (9th Cir. 1995). Finally, the caselaw is clear that filing an inaccurate disclosure statement "is appropriate basis for the total disallowance of compensation by counsel." *Grimmett*, 2017 WL 2437231 at *10; *see also Hale,* 208 B.R. at 931; *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045–46 (9th Cir. 1997); *Park–Helena Corp.*, 63 F.3d at 881–82. Here, Youngblood's Disclosure was incomplete and inadequate, and provides grounds for disgorgement of the entire $2,210 fee charged by him in this case.

MEMORANDUM OF DECISION - 15

## 2. The Court's Inherent Powers and § 526(c)

The Supreme Court stated that an Article III federal court has the inherent power "to control admission to this bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991).  The Ninth Circuit recognized that bankruptcy courts also "have the inherent power to sanction that *Chambers* recognized exists within Article III courts."  *Caldwell v. Unified Cap. Corp.* (*In re Rainbow Mag., Inc.*), 77 F.3d 278, 284 (9th Cir. 1996); *see also In re Aleman*, 2015 WL 1956271, at *1–2 (Bankr. D. Idaho Apr. 29, 2015); *In re Hurd,* 2010 WL 3190752, at *2 (Bankr. D. Idaho Aug. 11, 2010) ("A bankruptcy court has the authority to regulate the practice of lawyers who appear before it.  Such authority stems from the court's inherent powers, the Code and the Rules."); *Gardner v. Law Office of Lyndon B. Steimel (In re Valentine),* 2014 WL 1347229, at * 3 (Bankr. D. Idaho Apr. 3, 2014) ("The BAP recognized that, under Ninth Circuit precedent, the bankruptcy courts have the power to sanction under their civil contempt authority under § 105(a) and under their inherent sanction authority." (internal quotations omitted)).

These inherent powers are not without limits, however.  "Because of their potency, inherent powers must be exercised with restraint and discretion."  *Chambers*, 501 U.S. at 44.  Thus, like the bankruptcy court's civil contempt authority, inherent sanction authority "does not authorize significant punitive damages."  *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1197 (9th Cir. 2003) (noting that the Ninth Circuit has "refrained from authorizing a punitive damage award under the bankruptcy court's inherent sanction authority").  "Civil penalties must either be compensatory or designed to coerce

MEMORANDUM OF DECISION - 16

compliance." *Dyer,* 322 F.2d at 1192 (citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38 (9th Cir. 2001)).

When there is bad faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the Court ordinarily should rely on the Rules rather than its inherent power. But if in the informed discretion of the Court, neither the statute nor the Rules are up to the task, the Court may safely rely on its inherent power. *Chambers*, 501 U.S. at 50. As to statutory authority, if a clear and consistent pattern or practice of violating § 526 is found as is the case here, § 526(c) permits the Court to enjoin the violation and impose a civil penalty against the attorney. The UST asks for both an injunction and the imposition of a civil penalty under the Court's inherent powers and § 526.

      **a.**    **Injunctive Relief**

While the UST seeks injunctive relief against Youngblood and such relief has been proven to be appropriate, it has already been granted. First, the UST requests Youngblood be suspended from practice before this Court until the issues raised in the pending motion have been corrected. This request is moot, as Youngblood has been suspended under this Court's reciprocal discipline protocols and currently has no filing privileges.[7]

Second, the UST seeks to impose certain conditions on Youngblood's ability to

---

[7] Youngblood failed to pay his annual bar dues, and on March 14, 2022, the Idaho Bar Association suspended him from the practice of law. As a result, this Court issued a reciprocal notice of suspension and turned off Youngblood's electronic filing privileges.

MEMORANDUM OF DECISION - 17

file in this Court should Youngblood return to the practice of law. However, an injunction containing those conditions was issued by Chief Judge Meier in May 2022, when he ruled on the 44 cases pending before him on identical sanctions motions. Chief Judge Meier entered orders requiring that if Youngblood returns to the practice of law, he is required to:

> a. . . . obtain, file, and retain each debtor's wet signatures in accordance with the requirements of the Code, Rules, Local Rules and the Court's ECF Procedures;
>
> b. . . . file a statement bearing a wet signature from the client, attesting that Youngblood has met with the client and reviewed all important documents prior to filing; and
>
> c. [file a statement] that the client has had a reasonable opportunity to converse with Youngblood and to ask questions, and that Youngblood has responded to those questions.

*See e.g., In re Andreasen*, Case No. 19-40324-JMM at Doc. No. 54. The only condition Chief Judge Meier declined to impose was the UST's request that Youngblood's future clients include an assertion in their statement that they were "satisfied" with Youngblood's representation. To the extent the UST seeks an injunction specifically requesting that assertion be included, the Court agrees with Chief Judge Meier and does not find it appropriate. The Court will not require every client be "satisfied" with Youngblood's work. Thus, the Court will not order further injunctive relief to that already imposed by Chief Judge Meier.

MEMORANDUM OF DECISION - 18

### b. Civil Penalty

Finally, the UST asks the Court to impose a civil penalty pursuant to § 526(c)(5)(B)[8] to deter Youngblood from making untrue and misleading statements and representations in the future. While § 526(c)(5)(B) permits the imposition of a civil penalty where a pattern and practice of violations has occurred, the Court declines the UST's invitation here.

A civil penalty must be appropriate in amount and intended to deter violative conduct in the future. *In re Hanawahine*, 577 B.R. at 580 (citing *In re Huffman*, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014)); *In re Dellutri L. Grp.*, 482 B.R. 642, 653–54 (Bankr. M.D. Fla. 2012) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949) (a civil sanction is "remedial in nature and intended to enforce compliance.")). While the UST has established a clear and consistent pattern of violations on Youngblood's part, the Court finds a civil penalty unnecessary as a deterrent. The Court will order disgorgement of the fees charged in this case, and an injunction exists that will require significant record keeping and reporting requirements in future cases should Youngblood return to the practice of law. These measures are designed to curtail Youngblood's cavalier approach to the practice of law and ensure that any future practice conforms to applicable statutes, rules, and ethical responsibilities. As such, an additional deterrent in the form of a civil penalty is unwarranted here.

---

[8] This statute provides, "if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may . . . (B) impose an appropriate civil penalty against such person."

MEMORANDUM OF DECISION - 19

## CONCLUSION

Finding merit in some of the allegations raised in the UST's motion for sanctions, the Court will order disgorgement of the $2,210 in fees Youngblood charged Debtor for his services.  The Court will not impose any additional injunction to that which is already in place or civil penalty.

DATED:  August 3, 2022



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge